John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (858) 209-6941
jnelson@milberg.com

Danielle L. Perry (SBN 292120)
**MASON & PERRY LLP**
5335 Wisconsin Avenue NW
Suite 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SALLY ANDERSEN and MICHAEL KEMMERLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OAK VIEW GROUP, LLC,<br><br>Defendant. | CASE NO. 2:24-cv-00719-HDV-JPR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge: Hon. Hernán D. Vera<br>Date: August 13, 2026<br>Time: 10:00 a.m.<br>Courtroom: 5B<br><br>(Filed January 26, 2024) |

# TABLE OF CONTENTS


**PAGE**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The Requested Fee Amount is Reasonable Under the Percentage-of-Fund Method ........ 4

B. The Benefits Available to Class Members are Substantial ........ 6

1. The litigation was risky, complex, and expensive. ........ 7

2. Class Counsel performed superior work to achieve the Settlement. ........ 8

3. Class Counsel worked on a contingent basis. ........ 9

4. Fees awarded in comparable cases exceed those requested here ... 11

5. The reaction of the Class supports the fee request. ........ 12

C. A Lodestar Cross-Check Confirms the Reasonableness of the Fees Requested. ........ 12

1. Class Counsels' hourly rates are reasonable. ........ 13

2. The number of hours Class Counsel devoted to the case was reasonable. ........ 14

D. Class Counsel Litigation Expenses Are Reasonable. ........ 15

E. The $2,500 Service Awards Are Reasonable. ........ 16

III. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases:**

*Aguilar v. Wawona Frozen Foods*,
No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936 (E.D. Cal. May 19, 2017) ..11

*Ahmed v. HSBC Bank,USA*,
No. ED CV 15-2057 FMO(SPx),
2019 WL 13027266 (C.D. Cal. Dec. 30, 2019) ....................................................5

*Allagas v. BP Solar Int'l, Inc.*,
No. 3:14-CV-00560-SI, 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016)................9

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.*,
421 U.S. 240 (1975) ..........................................................................................4

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013)........................................................................11

*Blum v. Stenson*,
465 U.S. 886 (1984) ..........................................................................................13

*Boyd v. Bank of Am. Corp.*,
No. SACV 13–0561–DOC (JPRx),
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ....................................................11

*Brown v. 22nd Dist. Agric. Ass'n*,
No. 15-CV-02578-DHB, 2017 WL 3131557 (S.D. Cal. July 24, 2017).............10

*Burden v. Select Quote Ins. Servs.*,
No. C10-5966 LB, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)........................11

*Caudle v. Bristow Optical Co.*,
224 F.3d 1014 (9th Cir. 2000)............................................................................14

*Ching v. Siemens Indus.*,
No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .............10

*Craft v. Cnty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008).........................................................4, 13

*Dearaujo v. Regis Corp.*,
No. 2:14-cv-01408-KJM-DB2017,
2017 WL 3116626 (E.D. Cal. July 21, 2017)....................................................11

*DeCarlo v. Watermark Ret. Cmtys., LLC*,
No. 2:23-cv-01659, 2025 WL 2111437 (C.D. Cal. July 23, 2025)........................3

*DeRosa v. ViacomCBS Inc.*,
No. 2:20-cv-02965, 2024 WL 713739 (C.D. Cal. Feb. 21, 2024) ...................3, 11

*Emmons v. Quest Diagnostics Clinical Labs, Inc.*,
No. 1:13-cv00474-DAD-BAM, 2017 WL 749018 (E.D. Cal. Feb. 24, 2017) ....11

*Fernandez v. Victoria's Secret Stores, LLC*,
No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal. July 21, 2008)...........11

*Franco v. Ruiz Food Prods., Inc.*,
No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ...........11

*Fulford v. Logitech, Inc.*,
No. 08-CV-02041 MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010)...............17

*Garcia v. Gordon Trucking, Inc.*,
No. 1:10-cv-324-AWI-SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012).......11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)......................................................................... passim

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)...............................................................................15

*Hawthorne v. Umpqua Bank*,
No. 11-6700, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015)..............................16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..........................................................................................6

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)..................................................................5

*In re Am. Apparel, Inc. S'holder Litig.*,
No. 2:10-CV-06352-MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014)........9

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................... 4, 6, 13

*In re Capacitors Antitrust Litig.*,
No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .......................15

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-MD-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020).........................7

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ..8, 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ...........................................................................3

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
No. CV 07-05107 SJO AGRX, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ....3

*In re Lenovo Adware Litig.*,
No. 15-md-0624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019).........................16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...........................................................................17

*In re Mercury Interactive Corp.*,
618 F.3d 988 (9th Cir. 2010) .............................................................................4

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................7

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...........................................................................17

*In re Pac. Enters. Secs. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..............................................................................11

*In re Ring LLC Priv. Litig.*,
No. CV 19-10899, 2024 WL 2845978 (C.D. Cal. May 28, 2024).......................14

*In re Toyota Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 8:10-ML-2151, 2013 WL 12327929 (C.D. Cal. July 24, 2012) .....................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 3:15md-02672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ....................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ............................................................ 6, 9, 10, 14

*In re Yahoo! Inc. Customer Data Breach Litig.*,
No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020)......................15

*Kissel v. Code 42 Software Inc.*,
No. 8:15-cv-01936-JLS-KES, 2018 WL 6113078 (C.D. Cal. Feb. 20, 2018).....15

*Knight v. Red Door Salons, Inc.*,
No. 08–01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)............................8

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016).........................................................................................6

*Lee v. JPMorgan Chase & Co.*,
No. 13-cv-511-JLS, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015)..................11

*Lopez v. Youngblood*,
No. CV-F-07-0474, 2011 WL 10483569 (E.D. Cal. Sep. 2, 2011) .......................5

*Mejia v. Walgreen Co.*,
No. 2:19-CV-00218 WBS AC, 2021 WL 1122390 (E.D. Cal. Mar. 24, 2021)...12

*Nitsch v. DreamWorks Animation SKG Inc.*,
No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017)..............15

*Rankin v. Am. Greetings, Inc.*,
No. 2:10-CV-01831-GGH, 2011 WL 13239039 (E.D. Cal. July 6, 2011)............6

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................7, 16

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05-cv-0484-DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............11

*Rutti v. Lojack Corp., Inc.*,
No. SAVC 06-350 DOC, 2012 WL 3151077 (C.D. Cal. July 31, 2012)............15

*Singer v. Becton Dickinson Co.*,
No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ........11

*Smith v. CRST Van Expedited, Inc.*,
No. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. 2013) ...................11

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016)....................................................13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)....................................................................3

*Stetson v. Grissom*,
821 F.3d 1157 (9th Cir. 2016)..................................................................13

*Stuart v. Radioshack Corp.*,
No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)..................11

*Syed v. M-I, LLC*,
No. 1:12-cv-1718-DAD-MJS, 2017 WL 3190341 (E.D. Cal. July 27, 2017).....11

*Tait v. BSH Home Appliances Corp.*,
No. SACV 10–0711–DOC, 2015 WL 4537463 (C.D. Cal. July 27, 2015)...........5

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995)..........................................................13

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995)..........................................................16

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977)....................................................................15

*Vinh Nguyen v. Radient Pharm. Corp.*,
No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014)............................5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 ....................................................................................passim

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................................4

*Williams v. MGM-Pathe Comms. Co.*,
129 F.3d 1026 (9th Cir. 1997)..................................................................11

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997)......................................................................9

*Wren v. RGIS Inventory Specialists*,
No. 06-cv-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)..................11

*Zepeda v. PayPal, Inc.*, No. 4:10-C, V-02500, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)........................................9

**Rules:**

Fed. R. Civ. P. 23(e)..........................................................................................3

Fed. R. Civ. P. 23(h) ..........................................................................................3

**Other Authorities:**

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION ("MCL"), § 27.71, 336 (4th ed. 2004)..........................................................................6

4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)..........11

## I. INTRODUCTION

Counsel for Plaintiffs negotiated a settlement resolving the claims of those approximately 58,935 individuals who had their personally identifiable information ("PII") compromised in a cyberattack on Defendant Oak View Group LLC's ("Defendant" or "OVG") computer systems.[1]

The settlement negotiated on behalf of the Class Members provides for an $824,000 Settlement Fund that will provide valuable relief to the Class in the form of cash and credit monitoring services. *See* Settlement Agreement ("SA") ¶¶ 73–74. The cost of notice and claims administration, and Court-approved attorneys' fees and service awards, will also be paid from the Settlement Fund. SA ¶ 74.

All Settlement Class Members may claim compensation, up to a total of $5,000.00, upon submission of a Claim Form and supporting documentation, for unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after August 19, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. SA ¶ 79(a). Settlement Class Members may also claim a *pro rata* cash payment. *Pro rata* cash payments are structured such that California Residents receive three-times the amount provided to non-California Residents. SA ¶ 79(d). *Pro rata* cash payments are estimated to total $50 for non-California residents and $150 for California Residents. *Id.* All Settlement Class Members may also make a

[1] To avoid burdening the Court with an additional recitation of the background of the litigation, Plaintiffs incorporate by reference their Motion for Preliminary Approval of Class Action Settlement (ECF No. 60), pp. 1–6.

claim for two years of single bureau credit monitoring with at least $1 million in fraud protection. SA ¶ 79(e).

This hard-struck bargain took considerable time, effort, and skill. To reach this result, Class Counsel committed extensive resources to investigating this case, investigating the cause and effects of the Data Incident, interviewing potential clients, evaluating the potential class representative, contributing to the evaluation of the merits of the case before filing the Complaint; conducting legal research; conducting extensive research into data security incidents and their causes and effects, conducting further extensive research into data security practices and standards; drafting and filing the Complaint; researching, drafting and arguing the opposition to Defendant's motion to dismiss; propounding and preparing to respond to written discovery; conducting lengthy negotiations and informal discovery; drafting the settlement agreement, the relevant notices of settlement, the Motion for Preliminary Approval, and this motion for attorneys' fees; communicating with defense counsel; updating and handling questions from class representatives and absent class members; overseeing the launching of the notice program with substantial interaction between myself and the Settlement Administrator; and overseeing the claims process. Decl. of Danielle L. Perry in Supp. of Pls.' Mot. for Attorneys' Fees, Costs, and Service Awards ("Perry Fee Decl.").

The Settlement provides that Defendant will pay attorneys' fees up to one-third the amount of the Settlement Fund plus reimbursement of litigation costs. SA ¶ 111. Plaintiffs now respectfully request that the Court award Plaintiffs' attorneys' fees of $274,666.66 and litigation expenses of $1,987.90, which is presumptively reasonable under either the percentage of the fund or using a lodestar cross-check.

The Settlement also provides that Defendant will pay a $2,500 Service Award to each of the Plaintiffs. SA ¶ 112. This amount is commensurate with Plaintiffs' devotion to seeing the litigation through to conclusion, the risk they undertook, and

the time they expended, and Courts routinely approve such amounts. *DeRosa v. ViacomCBS Inc.*, No. 2:20-cv-02965, 2024 WL 713739, at *2 (C.D. Cal. Feb. 21, 2024) ($20,000 service award); *DeCarlo v. Watermark Ret. Cmtys., LLC*, No. 2:23-cv-01659, 2025 WL 2111437, at *5 (C.D. Cal. July 23, 2025) (a $5,000 service award is "modest, and well within the range approved by other courts within the Ninth Circuit."). The requested fee, expenses, and service awards are reasonable and should be approved.

## II. ARGUMENT

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorneys' fees and costs in class action settlements. Fed. R. Civ. P. 23(h). "Courts in this circuit determine attorneys' fees in class actions using either the lodestar method or the percentage-of recovery method." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). In deciding whether the requested fee amount is appropriate, the Court's role is to determine whether such amount is '"fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). The percentage-of-the-fund method is the prevailing practice in the Ninth Circuit. *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013). While the Ninth Circuit generally employs a 25% benchmark for attorney's fees, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). While not a "hard rule," Courts in the Ninth Circuit have noted that there is generally an inverse relationship between the size of the common fund and the acceptable percentage for attorneys' fees. *See, e.g.*, *In re Transpacific*

*Passenger Air Transp. Antitrust Litig.*, 3:07-CV-05634-CRB, 2019 WL 6327363, at *4 (N.D. Cal. Nov. 26, 2019) (noting that "empirical data indicates that larger settlement awards are generally associated with smaller percentage fees," and referencing a study that found the median fee percentage was 30 percent where the mean recovery was $37 million.). "Cases of under $10 Million will often result in fees above 25%." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297–98 (N.D. Cal. 1995) (noting that "[m]ost of the cases Class Counsel have cited in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million."); *Hod v. Medtronic MiniMed, Inc.*, No. 2:23-CV-07154-JLS-PVC, 2025 WL 2934516, at *7 (C.D. Cal. Sept. 18, 2025) (awarding 33% of the common fund in attorneys' fees and noting that "courts will often grant fees above the 25% benchmark in cases involving smaller funds")

### A. The Requested Fee Amount is Reasonable Under the Percentage-of-Fund Method.

District courts may award attorneys' fees and costs where "'the successful litigants have created a common fund for recovery or extended substantial benefit to the class.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)). Where counsel seek fees from a common fund, courts have discretion to employ either the percentage-of-fund or the lodestar-multiplier method to determine whether the fee request is reasonable. *See In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 104849 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Regardless of the chosen method, courts must award attorneys' fees based on an evaluation of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Under the "percentage-of-the-fund" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029. Most courts have found the percentage approach superior in cases with a common-fund recovery because it (i) parallels percentage-based contingency fee contracts; (ii) aligns the lawyers' interests with that of the class; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D. Cal. 1989); *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *Lopez v. Youngblood*, No. CV-F-07-0474, 2011 WL 10483569, at *3 (E.D. Cal. Sep. 2, 2011) (in common fund cases, the "percentage of the available fund analysis is the preferred approach in class action fee requests").

Indeed, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market," and "reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, No. SACV 10–0711–DOC, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015). And calculating attorneys' fees as a percentage-of-the-fund "aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Lopez*, 2011 WL 10483569, at *3.

The lodestar method, in contrast, "is typically used when the relief obtained is 'not easily monetized.'" *Ahmed v. HSBC Bank USA*, No. ED CV 15-2057 FMO (SPx), 2019 WL 13027266, at *5–6 (C.D. Cal. Dec. 30, 2019). It also "inadequately

responds to the problem of risk." *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (without the percentage-of-the-fund method of calculating fees, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." (citation and internal quotation marks omitted)). And it discourages early resolution. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 494 (2016) (the lodestar method creates a "financial incentive to extend the litigation"). The lodestar method is especially disfavored in evaluating fee requests where class counsel achieves an early settlement that provides significant pecuniary benefits to the class. *See Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) (explaining that "district courts within the Ninth Circuit have recognized that" even a "lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement").

Whether applying the lodestar or percentage method, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations . . . is the benefit obtained for the class."); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION ("MCL"), § 27.71, 336 (4th ed. 2004) ("[The] fundamental focus is on the result actually achieved for class members."). Under either approach, the requested award is reasonable.

**B. The Benefits Available to Class Members Are Substantial.**

Class Counsels' efforts resulted in a meaningful Settlement. All Settlement Class Members may submit a claim for up to $5,000 in reimbursements of documented expenses related to the Data Breach, a *pro rata* cash payment estimated to total $50 for non-California residents and $150 for California Residents, two years of single bureau credit monitoring that provides up to $1,000,000 in fraud insurance.

The results achieved here are substantial, and support Class Counsels' fee request.

**1. The litigation was risky, complex, and expensive.**

Risk is a critical factor in determining a fair fee award. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008) ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.") (citing *Vizcaino*, 290 F.3d at 1048).

Data breach cases are among the riskiest and most uncertain of all class actions and are innately complex. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32–33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions). This case is no exception. Defendant denies Plaintiffs' allegations of wrongdoing, has competent and experienced counsel and will vigorously defend against continued litigation. It involves complicated and technical facts, highly skilled opposing counsel, and numerous contested issues on class certification and substantive defenses. There are substantial hurdles that Plaintiffs would have had to overcome before trial.

Were litigation to proceed, there would be numerous expert reports and costly depositions. Establishing causation and damages on a class-wide basis is largely uncharted territory and full of uncertainty. Even if this Court had granted Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue. The Ninth Circuit recognizes the inherent risk that "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there is no guarantee the certification

would survive through trial, as Defendants might have sought decertification or modification of the class."). Although Plaintiffs believe they would have prevailed, a verdict for the defense was entirely possible. To the extent the law has accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged and the risks of the case ending entirely with Settlement Class Members receiving nothing remain high.

**2. Class Counsel performed superior work to achieve the Settlement.**

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:10-ML-2151, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2012) (quoting *Knight v. Red Door Salons, Inc.*, No. 08–01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)). The "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citations omitted). The results achieved are excellent.

In setting fee awards, courts also consider counsel's experience and skill. *Hanlon*, 150 F.3d at 1029. Class Counsels' skill and experience in complex litigation also favor the requested fee award here. The descriptions of the backgrounds of Class Counsel demonstrate that they are experienced in the highly specialized field of class actions, well credentialed, and equal to the difficult tasks at hand. *See generally* ECF No. 16-2. Class Counsels' fee request is commensurate with that experience, which they leveraged to procure the settlement. The skill demonstrated by Class Counsel in developing the complaint, briefing, arguing, and prevailing on Defendant's Motion to Dismiss, coordinating and developing the formal and informal discovery efforts, and negotiating and settling the action after significant litigation further

supports the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc.*, No. 4:10-CV-02500, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 3:14-CV-00560-SI, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel being "highly experienced in prosecuting and settling complex class actions" factors in favor of approval).

Class Counsel were also equal to the skill of the lawyers representing OVG. *See In re Am. Apparel, Inc. S'holder Litig.*, No. 2:10-CV-06352-MMM, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by a national, highly respected law firm, Gordon Reese Scully Mansukhani, with significant resources and substantial experience. This factor, therefore, weighs in favor of the requested fee award.

**3. Class Counsel worked on a contingent basis.**

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050. Courts long have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with fees that compensate them for the risk that they might be paid nothing at all. *See, e.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless

whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (observing courts reward class counsel in contingency cases "by paying them a premium over their normal hourly rates").

The potential of receiving little or no recovery weighs in favor of the requested fee. *See In re Wash. Pub. Power*, 19 F.3d at 1299; *Ching v. Siemens Indus.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557, at *8 (S.D. Cal. July 24, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

Here, Defendant adamantly denies any wrongdoing, much less a legal entitlement to recovery. The path to establishing liability was particularly challenging. Class Counsel expended significant resources despite the genuine risk that they would never be compensated—not only in this litigation, but also with competing cases in other Districts that could have settled without Class Counsel foregoing that other work. Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing that they would only receive a fee if there was a recovery. Class Counsel have received no compensation or expenses reimbursement while litigating this case. Moreover, Class Counsel faced a Defendant with ample resources, represented by experienced counsel. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

**4. Fees awarded in comparable cases exceed those requested here.**

Comparing the requested fees to awards in similar cases highlights the reasonableness of this application. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "Under the percentage method, California has recognized that most fee awards . . . are 33 percent …." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. 2013). Federal courts in the Ninth Circuit routinely follow California's approach, awarding attorneys' fees of roughly one-third of the settlement fund.[2]

Here, the fee requested represents less than 33.33% of the Settlement Fund. Fee awards in comparable cases support the requested fee here.

[2] *See, e.g.*, *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *DeRosa*, 2024 WL 713739, at *3 (awarding one-third); *Syed v. M-I, LLC*, No. 1:12-cv-1718-DAD-MJS, 2017 WL 3190341, at *8 (E.D. Cal. July 27, 2017) (awarding one-third); *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-DB2017, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding one-third); *Bennett v. SimplexGrinnell LP*, No. 11-cv-1854-JST (N.D. Cal. Sept. 3, 2015), ECF No. 278 at 11 (awarding 38.8%); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511-JLS, 2015 WL 12711659, at *8–9 (C.D. Cal. Apr. 28, 2015) (awarding one-third); *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561–DOC (JPRx), 2014 WL 6473804, at *10–11 (C.D. Cal. Nov. 18, 2014) (same); *Burden v. Select Quote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (same); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (same); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-324-AWI-SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (same); *Singer v. Becton Dickinson Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33% and citing two prior, similar Southern District awards); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010) (awarding one-third); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34%); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *9 (E.D. Cal. May 19, 2017) (awarding 33%); *Emmons v. Quest Diagnostics Clinical Labs, Inc.*, No. 1:13-cv00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 24, 2017) (awarding 33%); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *27–28 (N.D. Cal. Apr. 1, 2011) (awarding 42%).

**5. The reaction of the Class supports the fee request.**

The current amount of objections or disapproval by class members to Class Counsels' fee request further supports the Court finding that the fee request is reasonable. *See In re Heritage*, 2005 WL 1594389, at *15. As of the filing of this motion, the Settlement Administrator has received no objections to the Settlement or the attorneys' fee award or service award and only a single Class Member has submitted a request for exclusion. This is true even though the amount of fees Class Counsel intended to request was publicized in the notice to the Class. *See* SA Ex. 3.

**C. A Lodestar Cross-Check Confirms the Reasonableness of the Fees Requested.**

Application of the lodestar method as a cross-check—or as a preliminary method of calculating fees—confirms the reasonableness of the requested fees. *See Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The accompanying declaration of Class Counsel sets forth the hours of work and billing rates used to calculate the lodestar here. Class Counsel and staff have devoted a total of approximately 268.8 hours and have a total lodestar to date of $204,542.50. Perry Fee Decl. ¶¶ 10, 12. Class Counsel have also incurred reasonable litigation expenses of $1,987.90. *Id.* ¶¶ 18–19. The fee request represents a 1.34 multiplier on Class Counsels' lodestar incurred to date. Additional time will be spent monitoring the settlement administration, preparing the final approval motion, and appearing at the hearing. Courts in the Ninth Circuit routinely approve similar and much higher multipliers. *Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *8 (E.D. Cal. Mar. 24, 2021) (discussing court approval of lodestar multipliers from 2.0 to 4.5 and noting that multipliers "between 3 and 4.5 have become more common") (citations omitted). Plaintiffs' Counsels' time was reasonable and necessary for the prosecution of this action.

A court may reduce or enhance the lodestar figure based on "a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Bluetooth*, 654 F.3d at 942 (quoting *Hanlon,* 150 F.3d at 1029). "The district court must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016).

The requested multiplier of 1.34 is modest and in line with other Settlements and more than merited given the excellent results obtained on a contingency basis in this complex case. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 & Appendix (approving 3.65 multiplier and citing cases with multipliers as high as 19.6); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15md-02672, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) ("'Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.'") (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 29899 (N.D. Cal. 1995)); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (upholding a multiplier of approximately 5.2, and citing cases in support); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers.").

**1. Class Counsels' hourly rates are reasonable.**

In assessing an attorney's hourly rate, courts consider whether the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96, n.11 (1984). Courts apply each biller's current rates for all work

performed, regardless of when the work was performed, to compensate for the delay in payment. *In re Wash. Pub. Power*, 19 F.3d at 1305.

Class Counsel here are experienced, highly regarded members of the bar. They have brought to this case extensive experience in consumer class actions and complex litigation. Perry Fee Decl. ¶ 2. Class Counsels' customary rates are in line with prevailing rates in this District, have been approved by courts in this District and other courts, and are in line with the rates charged by contemporaries in the data breach bar. *Id.* ¶¶ 11–13; *see also In re Ring LLC Priv. Litig.*, No. CV 19-10899, 2024 WL 2845978 (C.D. Cal. May 28, 2024) (finding hourly rates up to $1,200 per hour reasonable).

**2. The number of hours Class Counsel devoted to the case was reasonable.**

The number of hours that Class Counsel has billed is reasonable. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (counsel entitled to recover for all hours reasonably expended). Class Counsel expect to maintain a high level of involvement in this case and will continue to incur significant amounts of time given the future work still needed, including: preparing the final approval motion, attending the final approval hearing, responding to any requests for exclusion or objections and filing any replies in support of final approval, and addressing any appeals. To date, Plaintiffs' Counsel has spent 268.8 hours for a lodestar total of $204,542.50 prosecuting this matter on behalf of Plaintiffs and the Settlement Class. Perry Fee Decl. ¶¶ 10, 11. This time was spent researching and drafting the initial complaints and operative consolidated complaint, responding in opposition to and arguing Defendant's motion to dismiss Plaintiffs' consolidated complaint, drafting and propounding written discovery and engaging in informal discovery efforts, negotiating the settlement and the finer points of the settlement agreement, working with the Settlement Administrator to effect and oversee the

notice program, and drafting the preliminary approval papers in addition to the instant motion.

**D. Class Counsel Litigation Expenses Are Reasonable.**

"In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense." *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *13 (N.D. Cal. June 5, 2017) (citing *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)). The appropriate analysis in deciding which expenses are compensable is whether the costs are of the type typically billed to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Kissel v. Code 42 Software Inc.*, No. 8:15-cv-01936-JLS-KES, 2018 WL 6113078, at *6 (C.D. Cal. Feb. 20, 2018). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.*, No. SAVC 06-350 DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Here, Settlement Class Counsel request reimbursement of expenses of $1,987.90. Perry Fee Decl. ¶¶ 18–19. Settlement Class Counsels' out-of-pocket costs were necessary to the prosecution of the action and are particularly reasonable given the complexities of this case. Such costs are regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee cases. *See, e.g.*, *In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of expenses similar to those requested here); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include:

those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs.") (citations omitted); *In re Lenovo Adware Litig.*, No. 15-md-0624, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019) (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees").

**E. The $2,500 Service Awards Are Reasonable.**

Class Counsel also requests that the Court approve Service Awards of $2,500 for each of the Class Representatives, Sally Andersen and Michael Kemmerlin. Service awards are typical in class actions, and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiffs took a risk by publicly associating themselves with this litigation and personally expended considerable effort on behalf of the Class by, *inter alia*, (1) meeting with Class Counsel; (2) assisting with investigation of the facts; (3) reviewing the complaint; (4) preparing to respond to Defendant's written discovery, and (5) consulting with Class Counsel during the litigation and settlement negotiations. Their commitment to the Class's interests and desire to remedy these issues for the entire Class were essential to the successful prosecution of this action and warrants recognition in the form of the service award requested. Perry Fee Decl. ¶ 22. Their commitment is notable given the modest size of their personal financial stakes in the matter. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) ("In exchange for his participation, [named plaintiff] will not receive great personal benefit. He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.").

The $2,500 Service Award sought here is in line with the amounts awarded in

comparable cases. *See, e.g.*, *Hawthorne v. Umpqua Bank*, No. 11-6700, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'") (citation omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (service awards of $5,000); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (service awards of $5,000); *see also Fulford v. Logitech, Inc.*, No. 08-CV-02041 MMC, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).

In light of the Class Representatives' commitment to the Settlement Class, the $2,500 Service Awards are modest and reasonable.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for entry of an Order approving Class Counsels' request for: (i) attorneys' fees in the amount of $274,666.66; (ii) reimbursement of litigation expenses in the amount of $1,987.90; and (iii) payment of Service Awards in the amount of $2,500 to each of the Class Representatives.

Dated: July 2, 2026

Respectfully submitted,

By: */s/ Danielle L. Perry*

Danielle L. Perry (SBN 292120)
**MASON & PERRY LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel: (858) 209-6941
jnelson@milberg.com

*Counsel for Plaintiffs and the Proposed Class*

**Certificate of Compliance Pursuant to L.R. 11-6.2**

The undersigned, counsel of record for Plaintiffs and the Settlement Class, certifies that this brief contains 5,518 words, which complies with the word limit of L.R. 11-6.1.

Date: July 2, 2026 Respectfully Submitted,

*/s/ Danielle L. Perry*